UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ROSALIND WOOLCOTT,

                        Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                            13-CV-2964(JS)(GRB)

            -against-

JOSEPH BARATTA, J.R. BARATTA, INC. and
AMADO ORTIZ,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Alex Kriegsman, Esq.
                    Kriegsman PC
                    287 Main Street
                    Sag Harbor, NY 11963

For Defendants
The Baratta
Defendants:         Wendy Ellen Miller, Esq.
                    Cooper & Dunham
                    1185 Avenue of the Americas
                    New York, NY 10036

                    Brian Marc Taddonio, Esq.
                    Ditthavong Mori & Steiner
                    250 Park Avenue, St 7054
                    New York, NY 10177

Ortiz:              Edward Timothy McAuliffe, Jr., Esq.
                    Tarbet & Lester, PLLC
                    524 Montauk Highway
                    P.O. Box 2635
                    Amagansett, NY 11930


SEYBERT, District Judge:

        Plaintiff Rosalind Woolcott ("Plaintiff" or "Woolcott")

commenced this copyright infringement action on May 20, 2013

against Defendants Joseph Baratta ("Baratta"); J.R. Baratta, Inc.

("J.R. Baratta," and together with Baratta, the "Baratta

Defendants"); and Amado Ortiz ("Ortiz" and together with the Baratta Defendants, "Defendants"). Woolcott alleges that Defendants infringed upon her copyright in the architectural design of a residential house in East Hampton, New York when Defendants designed and constructed two houses that, according to Woolcott, are substantially similar to Woolcott's design. The Amended Complaint alleges copyright infringement under 17 U.S.C. § 501 and state law claims of conversion and unfair competition. Defendants move to dismiss Woolcott's copyright claim for lack of statutory standing and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entries 18-19.) Defendants also move to dismiss the state law claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, on the basis that federal copyright law preempts the state law claims. For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

I.  <u>Factual Background</u>[1]

Woolcott is an individual residing in East Hampton, New York. (Am. Compl., Docket Enty 15, ¶ 4.) She holds a certificate

---

[1] The following facts are taken from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

of copyright registration issued by the United States Copyright Office for an "architectural work" identified in the registration certificate as The Woolcott Residence.[2]  (Am. Compl. Ex. A.)  The Woolcott Residence is a design of a residential home "embodied in a tangible medium of expression, including but not limited to, a building, architectural plans, and drawings." (Am. Compl. ¶ 14.) Construction of The Woolcott Residence was completed in East Hampton, New York in May of 2010.  (Am. Compl. Ex. A.)

Woolcott alleges that J.R. Baratta (a homebuilding and general contracting company), Baratta (the president of J.R. Baratta), and Ortiz (an architect) illegally copied the design of The Woolcott Residence for use in the construction of two homes in East Hampton, New York--one at 5 Woodpink Drive (the "Woodpink House") and the other on Koala Lane (the "Koala House," and together with the Woodpink House, the "Baratta Houses").[3]  Woolcott specifically alleges that the Baratta Defendants "gained access to [The Woolcott Residence] by posing as potential buyers" and that they "obtained a copy of the plans for [The Woolcott Residence] through an inquiry at the Town of East Hampton Building

---

[2] The Amended Complaint alleges that the architectural design of The Woolcott Residence is "internally known as the 'Modern Manor House.'"  (Am. Compl. ¶ 8.)

[3] According to the Amended Complaint, at the time of the filing of the Amended Complaint, Defendants had completed construction of the Woodpink House but were currently building the Koala House.  (Am. Compl. ¶¶ 19, 22.)

Department." (Am. Comp. ¶¶ 32-33.) The Baratta Defendants then "showed [Ortiz The Woolcott Residence] and the architectural plans" and "employed and solicited [his] services . . . to copy [The Woolcott Residence] and infringe on [Woolcott's] copyright by creating drawings, sketches, and architectural plans that are substantially similar to the protectable elements of [Woolcott's] copyrightable subject matter." (Am. Compl. ¶¶ 34-35.)

The Amended Complaint asserts a cause of action for copyright infringement pursuant to 17 U.S.C. § 501 and state law claims for "conversion of [Woolcott's] intellectual property" and unfair competition. (Am. Compl. ¶¶ 28-60.) With respect to the unfair competition claim, Woolcott alleges that "Defendants obtained plans and designs of Plaintiff's intellectual property through intentional, unlawful, and deceptive conduct" and that the "use by Defendants of Plaintiff's copyright create [sic] an unfair advantage to the detriment of Plaintiff." (Am. Compl. ¶¶ 56, 58.) As an example, Woolcott alleges that she "was planning to sell the plans and designs to [The Woolcott Residence] and had at least one potential buyer who was willing to purchase the plans and designs . . . until he learned of Defendants' unlawful copying." (Am. Compl. ¶ 55.)

The Amended Complaint attaches the registration certificate and the architectural plans to The Woolcott Residence (the "Woolcott Plans"), which Woolcott deposited with the

Copyright Office. (See Am. Compl. Exs. A-B.) The Amended Complaint also attaches a photograph of the back side of The Woolcott Residence, but not the front side of it; a photograph of the front side of the Woodpink House, but not the back side of it; and the architectural plans to the Woodpink House. (Am. Compl. Exs. C-E.) The Amended Complaint does not attach any photographs of the Koala House, nor does it attach the architectural plans to the Koala House.

## II. Procedural History

Woolcott commenced this action on May 20, 2013. Defendants moved to dismiss the original Complaint in June of 2013. (Docket Entries 9 & 14.) On July 5, 2013, Woolcott filed the Amended Complaint, and the Court subsequently denied Defendants' original motions to dismiss as moot on August 21, 2013. On August9, 2013, the Baratta Defendants moved to dismiss the Amended Complaint. (Docket Entry 18.) On August 15, 2013, Ortiz also moved to dismiss the Amended Complaint. (Docket Entry 19.) These motions are currently pending before the Court.

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of Defendants' pending motions to dismiss.[4]

---

[4] The Court notes that while Ortiz has filed his own motion to dismiss and supporting brief, Ortiz has also joined in the

I.    Legal Standard

        In deciding a Rule 12(b)(6) motion to dismiss, the Court
applies a "plausibility standard," which is guided by "[t]wo
working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.
Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572
F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must
accept all allegations as true, this "tenet" is "inapplicable to
legal conclusions;" thus, "[t]hreadbare recitals of the elements
of a cause of action, supported by mere conclusory statements, do
not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at
72. Second, only complaints that state a "plausible claim for
relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556
U.S. at 679. Determining whether a complaint does so is "a
context-specific task that requires the reviewing court to draw on
its judicial experience and common sense." Id.; accord Harris,
572 F.3d at 72.

        The Court is confined to "the allegations contained
within the four corners of [the] complaint." Pani v. Empire Blue
Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this
has been interpreted broadly to include any document attached to
the complaint, any statements or documents incorporated in the

_____

Baratta Defendants' brief. (See Ortiz Br., Docket Entry 19-1,
at 6.) Although it is much shorter, Ortiz's brief raises the
same arguments raised in the Baratta Defendants' brief.

complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II.  Copyright Infringement Claim

        To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Perrin & Nissen Ltd. v. SAS Grp., Inc., No. 06-CV-13089, 2009 WL 855693, at *4 (S.D.N.Y. Mar. 27, 2009) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991)).  Defendants urge the Court to dismiss Woolcott's copyright infringement claim for two reasons.  First, Defendants argue that Woolcott lacks standing to bring her copyright claim because she does not own a valid copyright for The Woolcott Residence. (Baratta Br., Docket Entry 18-1, at 6-8; Ortiz Br. at 4-5.)  Second, Defendants argue that Woolcott has not adequately alleged that Defendants copied The Woolcott Residence because The Woolcott Residence is not substantially similar to the Baratta Houses as a matter of law.  (Baratta Br. at 8-11; Ortiz Br. at 6.)  The Court will address these arguments in turn.

A.    Ownership of a Valid Copyright

Section 501(b) of the Copyright Act provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  The Second Circuit has stated that this provision "authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." Eden Toys, Inc. v. Florelee Undergarment Co., 697 F. 2d 27, 32 (2d Cir. 1982), superseded on other grounds by FED. R. CIV. P. 52(a). In addition, under the Copyright Act, a registration certificate "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).[5]

Here, Woolcott alleges in the Amended Complaint that The Woolcott Residence "is an original 'architectural work' owned and created by [Woolcott]"[6] and that Woolcott obtained a certificate

---

[5] Section 411(a) of the Copyright Act also "requires copyright holders to register their works before suing for copyright infringement."  Reed Elsevier, Inc. v. Muchnick, 599 U.S. 154, 157, 130 S. Ct. 1237, 1241, 176 L. Ed. 2d 18 (2010) (citing 17 U.S.C. § 411(a)).

[6] The Copyright Act defines "architectural work" as "the design of a building as embodied in any tangible medium of expression,

of copyright registration from the United States Copyright Office on May 31, 2012. (Am. Compl. ¶¶ 11-13.) These allegations alone are sufficient to state a claim that Woolcott owns a valid copyright. See, e.g., Domino Recording Co. v. Interscope Geffen A&M Records, No. 09-CV-8400, 2010 WL 3001953, at *1 (S.D.N.Y. July 22, 2010); Perrin, 2009 WL 855693, at *4. In addition, by attaching the registration certificate to the Amended Complaint, which states that Woolcott is the author of The Woolcott Residence (Am. Compl. Ex. A), Woolcott has produced prima facie evidence that she is the author of The Woolcott Residence and that she owns a valid copyright. See 17 U.S.C. § 410(c).

Nonetheless, Defendants argue that Woolcott does not own the copyright to The Woolcott Residence and that she therefore lacks standing to bring the copyright claim. Defendants first claim that Woolcott is not the author of the Woolcott Plans, and therefore does not own a valid copyright to The Woolcott Residence, because the architectural plans that Woolcott deposited with the Copyright Office contain notations identifying "J.M.B." and "J. Osborn" as the draftsmen. (Baratta Br. at 7; Ortiz Br. at 4-5.) Woolcott counters that "the fact that the drawings may have been prepared by draftsmen[ ] does not defeat Plaintiff's allegation of

---

including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101.

ownership or her standing" or the fact that the copyright registration identifies Woolcott as the author. (Woolcott Br., Docket Entry 21, at 11.)

Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work . . . ." 17 U.S.C. § 201(a). "'[A]s a general rule, the author is . . . the person who translates an idea into a fixed, tangible expression . . . .'" Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 107 (2d Cir. 2002) (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S. Ct. 2166, 2171, 104 L. Ed. 2d 811 (1989)); see also Kregos v. Associated Press, 3 F.3d 656, 663 (2d Cir. 1993) ("[C]opyright does not protect an idea, but only the expression of an idea."). However, "an 'author' can authorize another to 'fix' his original idea." Medforms, 290 F.3d at 107 (citing Andrien v. S. Ocean Cnty. Chamber of Commerce, 927 F.2d 132, 134 (3d Cir. 1991)); 17 U.S.C. § 101 (stating that a "work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . , by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration").

In Andrien, the Third Circuit explained the limits of authorizing another to fix an original idea into a tangible expression for copyright purposes. There, the Third Circuit stated

that "when one authorizes embodiment, that process must be rote or mechanical transcription that does not require intellectual modification or highly technical enhancement such as . . . <u>architectural drawings</u> . . . ." 927 F.2d at 135 (internal citations omitted). In line with <u>Andrien</u>, the court in <u>Zitz v. Pereira</u>, 119 F. Supp. 2d 133 (E.D.N.Y. 1999), <u>aff'd</u> 225 F.3d 646 (2d Cir. 2000) held that the plaintiff was not the author of architectural plans, even though he provided the architects with his own drawings, explaining that,

> [plaintiff] did not have the expertise, as well as the authority, to prepare plans required . . . in support of an application for a building permit.
>
> . . . .
>
> [Plaintiff] did not file his own sketches of the floor plans . . . with the Copyright Office. Instead, he filed the plans prepared by [the architects], which [plaintiff] did not prepare. [The Court] therefore conclude[s] that [plaintiff] did not author the architectural plans deposited with the Copyright Office, that he deliberately misrepresented the true facts to the Copyright Office, and that the defendants have successfully rebutted the presumption of validity embodied in the registration of technical drawings of [the works at issue].

119 F. Supp. 2d at 145.

Thus, Defendants' argument that Woolcott is not the author of The Woolcott Residence based on the notations indicating that others prepared the Woolcott Plans has significant facial

appeal. Nevertheless, the Court finds that Defendants' argument is premature and better reserved for a motion for summary judgment following discovery, which will shed light on the precise role that Woolcott played in the authoring of the Woolcott Plans. Indeed, in Zitz, the court reached its conclusion that the plaintiff was not the author of the architectural plans at issue only at the conclusion of a bench trial after an examination of all of the relevant evidence. Although the notations appear to identify authors other than Woolcott, and the Court seriously questions Woolcott's allegations of authorship, at the motion to dismiss stage, the Court must accept as true all facts alleged in the Amended Complaint and "draw all reasonable inferences in favor of the non-moving party." McCarthy v. Stollman, No. 06-CV-2613, 2009 WL 1159197, at *4 (S.D.N.Y. Apr. 29, 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)). Moreover, as noted above, Woolcott's copyright registration constitutes prima facie evidence that she is the author of The Woolcott Residence.

This is not to say that dismissal of a copyright claim at the pleading stage is foreclosed if the plaintiff produces a copyright registration. TPTCC NY, Inc. v. Radiation Therapy Servs., Inc., 784 F. Supp. 2d 485, 499 n.1 (S.D.N.Y. 2011) (rejecting argument "that a court may not dismiss a copyright claim on the pleadings if there is a copyright registration" because

"[t]his is not the law in the Second Circuit"), rev'd on other grounds, 453 F. App'x 105 (2d Cir. 2011). Rather, possession of a copyright registration "provides its holder with a rebuttable presumption of ownership of a valid copyright" and "also creates a rebuttable presumption that all facts stated in the certificate are true." Fleurimond v. N.Y. Univ., 876 F. Supp. 2d 190, 197 (E.D.N.Y. 2012) (quoting R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 52 (S.D.N.Y. 2009)). To rebut the presumption that a plaintiff's copyright is valid, a defendant must show "that the certificates of registration are somehow invalid or that [the plaintiff] does not in fact own the copyrights." CJ Prods. LLC v. Concord Toys Int'l, Inc., No. 10-CV-5712, 2011 WL 178610, at *3 (E.D.N.Y. Jan. 19, 2011). Indeed, courts have considered and dismissed copyright infringement claims on Rule 12(b)(6) motions to dismiss notwithstanding the production of a copyright registration. See, e.g., TPTCC, 784 F. Supp. 2d at 499 (dismissing copyright claim because the work at issue "lack[ed] any indicia of creativity, and thus does not merit copyright protection"). Here, however, the Baratta Defendants have stated that "on this motion to dismiss, [they] do[ ] not assert that the registration is invalid or should not have issued." (Baratta Reply Br., Docket Entry 23, at 4 n.1.) Rather, they "assert[ ] only that Plaintiff lacks standing to bring this lawsuit based on the internal inconsistencies in Plaintiff's own pleading . . . ." (Baratta

Reply Br. at 4 n.1.)  In any event, as discussed above, the Court

finds that Woolcott has met her pleading burden, even if by a razor

thin margin, and that Defendants have not rebutted the presumption

of validity afforded to the facts stated in the registration

certificate at this stage of the litigation.

Defendants next rely on the affidavit of Rossetti

Perchik ("Perchik"), an architect who claims to be "the architect

of record" of The Woolcott Residence.  (Perchik Aff., Docket Entry

18-3, ¶ 3.)  In his affidavit, Perchik alleges that in April 2013,

Woolcott asked him to sign a copyright assignment transferring to

Woolcott any potential copyright Perchik might own in the plans,

drawings, and specifications of The Woolcott Residence.  (Perchik

Aff. ¶ 5.)  According to Defendants, the copyright assignment,

which is attached to Perchik's affidavit, demonstrates that

Woolcott is not the author of The Woolcott Residence and that she

in fact did not acquire any rights to The Woolcott Residence until

at least one year after she obtained the registration certificate.

(Baratta Br. at 8; Ortiz Br. at 5.)  Ortiz speculates that "[i]f

Plaintiff were the true author of [The Woolcott Residence], she

would have had no reason to seek a purported assignment from Mr.

Perchik."  (Ortiz Br. at 5 n.1.)

However, the Perchik affidavit and the copyright

assignment may not be considered by the Court on a motion to

dismiss.  Woolcott did not refer to the copyright assignment in

the Amended Complaint and "it is improper for a court to consider declarations and affidavits on a motion to dismiss." Novie v. Vill. of Montebello, No. 10-CV-9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012). Moreover, the Amended Complaint claims that Woolcott is the creator of The Woolcott Residence, not that she acquired the copyright to The Woolcott Residence via an assignment from Perchik, and thus, Defendants' motion to dismiss presents a factual dispute that is "not appropriately decided at the dismissal stage." McCarthy, 2009 WL 1159197, at *4 (declining to resolve disputed copyright ownership issues on a motion to dismiss).[7] Accordingly, Defendants' motions to dismiss on the ground that Woolcott lacks standing are DENIED.

B.   Substantial Similarity

As noted above, in order to state a claim for copyright infringement, a plaintiff also must allege "copying of constituent elements of the work that are original." Perrin, 2009 WL 855693,

---

[7] Federal Rule of Civil Procedure 12(d) permits a court to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court . . . ." FED. R. CIV. P. 12(d). However, a court is not required "to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 450 (E.D.N.Y. 2007). As the Court explained above, Defendants' motions to dismiss ask the Court to resolve a factual dispute. Thus, in its discretion, the Court declines to convert Defendants' motions into ones for summary judgment.

at *4.  In order to satisfy this element, a plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001) (emphasis in original) (quoting Hamil Am., Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)). Because the architectural plans for The Woolcott Residence are publicly available at the Town of East Hampton Building Department, Defendants do not dispute actual copying for the purpose of their motions to dismiss.  (Baratta Br. at 8 n.6.); see also Hallford v. Fox Entm't Grp., Inc., No. 12-CV-1806, 2013 WL 541370, at *3 (S.D.N.Y. Feb. 13, 2013) ("Courts generally assume for the purposes of a motion to dismiss that the first element is satisfied and focus instead on whether a substantial similarity exists between the works." (citation omitted)), aff'd, --- F. App'x ----, 2014 WL 777694 (2d Cir. 2014).  Rather, Defendants argue that Woolcott has not adequately alleged that Defendants copied The Woolcott Residence because The Woolcott Residence is not substantially similar to the Baratta Houses as a matter of law.

       "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." Peter F. Gaito

16

<u>Architecture, LLC v. Simone Dev. Corp.</u>, 602 F.3d 57, 66 (2d Cir. 2010) (internal quotation marks omitted) (alteration in original) (quoting <u>Yurman</u>, 262 F.3d at 111). The "ordinary observer" test asks "whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" <u>Id.</u> (quoting <u>Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)</u>, 71 F.3d 996, 1002 (2d Cir. 1995). When works "have both protectible and unprotectible elements," a "more discerning" analysis is required and the court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." <u>Id.</u> (internal quotation marks and citations omitted).

However, the Second Circuit has also "disavowed any notion that '[a court is] required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." <u>Id.</u> (internal quotation marks omitted) (second alteration in original) (quoting <u>Knitwaves</u>, 71 F.3d at 1003). Rather a court must compare "the contested design's total concept and overall feel with that of the allegedly infringed work as instructed by [its] good eyes and common sense." <u>Id.</u> (internal quotation marks and citations omitted). This is so because a claim for copyright infringement may be premised on more than just "literal copying" of protectible elements. <u>Id.</u> (internal quotation marks and citation omitted). Thus, "'[w]here the alleged

infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work,' this too constitutes unauthorized copying." Zalewski v. T.P. Builders, Inc., 875 F. Supp. 2d 135, 147 (N.D.N.Y. 2012) (quoting Gaito, 602 F.3d at 66).

"The question of substantial similarity is by no means exclusively reserved for resolution by a jury" and "in certain circumstances, it is entirely appropriate for a district court to resolve that question" at the motion to dismiss stage. Gaito, 602 F.3d at 63. In considering the issue of substantial similarity at the motion to dismiss stage, "a district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Id. at 64 (internal quotation marks and citation omitted). Thus, the Court may consider the copyrighted works and the allegedly infringing works, keeping in mind that the documents supersede the parties' allegations, without necessarily requiring any additional discovery. Id.

Here, though, the Court does not have before it all that is necessary to decide whether the Baratta Houses are substantially similar to The Woolcott Residence. Although the Amended Complaint attaches a photograph of The Woolcott Residence, as well as its architectural plans, the photograph displays only the back side of

the house and the Amended Complaint does not attach a photograph of the Koala House or its architectural plans. The Amended Complaint does attach architectural plans for the Woodpink House and photograph of the front side of the Woodpink House, but the photograph does not display the back side of the Woodpink House.

Defendants' motions attach a photograph of the front side of The Woolcott Residence and the front side of the Koala House during its construction.[8] Defendants argue that the Court may consider these photographs without converting their motions into ones for summary judgment even though the photographs were not attached to the Amended Complaint. Whether Defendants are correct in this regard, however, is irrelevant, because even if the Court considered Defendants' photographs, the parties still have not presented photographs of the back sides of the Baratta Houses or the architectural plans to the Koala House. Courts that have conducted the substantial similarity analysis at the motion to dismiss stage have noted that it is appropriate where the Complaint attaches the copyrighted works. See Gaito, 602 F.3d at 64 ("[W]here, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection

_____

[8] On January 17, 2014, the Baratta Defendants moved for leave to file a supplemental declaration attaching an updated photograph of the Koala House after completion of the exterior construction. (Docket Entry 24.)

with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation."); accord TufAmerica, Inc. v. Diamond, No. 12-CV-3529, 2013 WL 4830954, at *4 (S.D.N.Y. Sept. 10, 2013).  Here, the Court concludes that it does not have before it all that is necessary to make a determination of substantial similarity.  Accordingly, Defendants' motions to dismiss the Amended Complaint on the ground that The Woolcott Residence is not substantially similar to the Baratta Houses as a matter of law are DENIED.[9]  The Baratta Defendants' motion for leave to file an updated photograph of the Koala House is consequently DENIED AS MOOT.

III. State Law Claims

Finally, Defendants move to dismiss Woolcott's state claims of conversion and unfair competition on the basis that the state law claims are preempted by the Copyright Act.  (Baratta Br. at 6-7 (incorporating Baratta Br. to Dismiss Original Compl., Docket Entry 10, at 5-6); Ortiz Br. at 6-7.)  Woolcott offers no response to this argument.  As discussed below, the Court agrees

---

[9] The Court does find it telling, however, that Woolcott has not submitted photographs displaying both sides of The Woolcott Residence.  At least one treatise has warned that "[w]here a federal judge perceives (correctly or not) that a plaintiff attempted to conceal a weak case by failing to attach sample copyrighted material and infringing material, the plaintiff may be severely prejudiced moving forward."  RAYMOND J. DOWD, COPYRIGHT LITIGATION HANDBOOK § 9.9 (2d ed. 2013).

with Defendants that the Copyright Act preempts Woolcott's state law claims of conversion and unfair competition.

A.   Applicable Law

Section 301(a) of the Copyright Act states:

> On or after January 1, 1978, all legal or
> equitable rights that are equivalent to any of
> the exclusive rights within the general scope
> of copyright as specified by section 106 in
> works of authorship that are fixed in a
> tangible medium of expression and come within
> the subject matter of copyright as specified
> by sections 102 and 103 . . . are governed
> exclusively by this title. . . . [N]o person
> is entitled to any such right or equivalent
> right in any such work under the common law or
> statutes of any State.

17 U.S.C. § 301(a).  Thus, the Copyright Act will preempt a state law claim when two conditions are met.  "First, the subject matter of the work upon which the state claims are premised must fall within the subject matter of the Copyright Act, as defined by the Act."  Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc., No. 06-CV-2083, 2006 WL 3500702, at *11 (S.D.N.Y. Dec. 4, 2006) (emphasis added) (citing Stewart v. World Wrestling Entm't, Inc., No. 03-CV-2468, 2005 WL 66890, at *2 (S.D.N.Y. Jan. 11, 2005)).  "Second, the rights that are asserted under the state law must be equivalent to those protected by the Copyright Act."  Id. (emphasis added).

The first condition, known as the "subject matter" requirement, "is satisfied if the claim applies to a work of

authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004) (citation omitted).  Under the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  Included in the works of authorship protected by the Copyright Act are "architectural works."  Id. § 102(a)(8).  In addition, "[a] work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense."  Briarpatch, 373 F.3d at 305 (citing Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848-50 (2d Cir. 1997)).

The second condition, the "general scope" requirement, "is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law."  Id. (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." Id. (citing 17 U.S.C. § 106; Computer Assocs., 982 F.2d at 716).

Additionally, "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim."  Id. 305-06 (citing Nat'l Basketball Ass'n, 105 F.3d at 851; Computer Assocs., 982 F.2d at 716).  In determining whether a claim is "qualitatively different," a court must "look at 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'"  Id. (alteration in original) (quoting Computer Assocs., 982 F.2d at 716).  The Second Circuit has cautioned courts to "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."  Id. at 306 (citing Nat'l Basketball Ass'n, 105 F.3d at 851).

B.  Application

Applying this two-pronged test here, the Court finds that the federal copyright law preempts Woolcott's state law claims of conversion and unfair competition.  The Woolcott Plans--since they are architectural plans, drawings, and specifications--are a "work[ ] of authorship fixed in a tangible medium of expression" that fall within one of the categories of copyrightable works under the Copyright Act.  See 17 U.S.C. § 102(a)(8) ("Works of authorship include the following categories: . . . architectural works."); see also Frontier Grp., Inc. v. N.W. Drafting & Design, Inc., 493 F. Supp. 2d 291, 298 (D. Conn. 2007); Innovative Networks, Inc. v.

23

Satellite Airlines Ticketing Ctrs., Inc., 871 F. Supp. 709, 730 (S.D.N.Y. 1995). Thus, the "subject matter" requirement of the test is satisfied.

The Court finds that the second prong of the test--the "general scope" requirement--is also met. Woolcott's first state law claim is for conversion. Woolcott alleges that "Defendants converted to their own use intellectual property that was then the property of Plaintiff." (Am. Compl. ¶ 49.) Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100 (2006) (emphasis added) (citation omitted). Here, because Woolcott's claim for conversion "comprise[s] the same materials for which [Woolcott] sought copyright protection, rather than conversion of physical documents," the conversion claim is preempted by Woolcott's copyright claim. C.A. Inc. v. Rocket Software, Inc., 579 F. Supp. 2d 355, 367 (E.D.N.Y. 2008). In other words, Woolcott's "conversion" claim is one of wrongful use or reproduction, not one of wrongful physical possession, and it is therefore not qualitatively different than her copyright claim. See Frontier, 493 F. Supp. 2d at 298-300 (finding that federal copyright law preempted state law claim that defendant converted

architectural plans through "acts of reproduction, or otherwise wrongful usage"). Accordingly, because federal copyright law preempts Woolcott's conversion claim under state law, the conversion claim is DISMISSED WITH PREJUDICE.

Woolcott's state law claim for unfair competition similarly lacks any extra qualitative element that differentiates it from her copyright claim. The Second Circuit has held that "unfair competition and misappropriation claims grounded solely in the copying of plaintiff's protected expression are preempted by [the Copyright Act]." Patrick v. Francis, 887 F. Supp. 481, 484 (W.D.N.Y. 1995) (collecting cases). Here, Woolcott alleges that "Defendants obtained plans and designs of Plaintiff's intellectual property through the intentional, unlawful, and deceptive conduct" and that the "use by Defendants of Plaintiff's copyright create an unfair advantage to the detriment of Plaintiff." (Am. Compl. ¶¶ 56, 58.) As an example, Woolcott alleges that she "was planning to sell the plans and designs to [The Woolcott Residence] and had at least one potential buyer who was willing to purchase the plans and designs . . . until he learned of Defendants' unlawful copying." (Am. Compl. ¶ 55.) Thus, Woolcott's unfair competition claim simply challenges Defendants' alleged unlawful copying of The Woolcott Residence and is therefore preempted by her copyright claim. Innovative Networks, 871 F. Supp. at 730-31 (finding that a claim for the wrongful appropriation of the plaintiff's

architectural plans was preempted by federal copyright law); Demetriades v. Kaufmann, 698 F. Supp. 521, 526 (S.D.N.Y. 1988) (same). Accordingly, because federal copyright law preempts Woolcott's unfair competition claim, the unfair competition claim is DISMISSED WITH PREJUDICE.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Defendants' motions to dismiss Woolcott's copyright claim are DENIED. The Baratta Defendants' motion for leave to file an updated photograph of the Koala House is consequently DENIED AS MOOT. Defendants' motions to dismiss Woolcott's state law claims of conversion and unfair competition are GRANTED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     May __7__, 2014
           Central Islip, NY